UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Felix Andreoni,<br>　　　*Plaintiff,*<br><br>　　　*v.*<br><br>Forest City Enterprises, Inc.; Sterling Glen of<br>Stamford; FC Stamford II, LLC; and Canton Centre<br>Mall Limited Partnership,<br>　　　*Defendants.* | Civil No. 3:07cv1699 (JBA)<br><br><br><br><br>June 22, 2009 |

**RULING AND ORDER ON PLAINTIFF'S MOTION TO REMAND [Doc. # 50]**

Plaintiff Felix Andreoni, a Connecticut resident who formerly worked at an assisted living facility called Sterling Glen of Stamford, seeks remand to state court[1] of his complaint containing exclusively state-law claims.  Defendants removed the case on the basis of diversity jurisdiction, and later amended their Notice of Removal to claim federal-question jurisdiction on a theory that Title VII preempts state anti-discrimination laws.  Because some of the Defendants are unincorporated artificial entities, the citizenship of the persons or entities comprising these defendants must be known.  After having been given two opportunities to submit supplemental documentation of Defendants' citizenship, and after discovery on the subject, Defendants' record on which they claim complete diversity of citizenship remains deficient, and Plaintiff's motion to remand will be granted.

---

[1] Plaintiff filed his complaint in Connecticut Superior Court, Judicial District of Stamford/Norwalk, at Stamford, where the case was given docket number CV 07-600743-S.

I.      **Background and Procedural History**

Mr. Andreoni filed his original complaint in Connecticut Superior Court in October 2007, and named two defendants: "Forest City Enterprises, Inc." and "Sterling Glen," the latter of whose official name, he alleged, is "Sterling Glen Assisted Living Services Agency, LLC." (Compl., Ex. B to Not. Removal [Doc. # 1], at 1 & ¶ 3.)  Plaintiff, a resident of Greenwich, Connecticut, alleges that he began working in July 2005 as the Maintenance Director for Sterling Glen of Stamford, an assisted living residence, where he "was repeatedly praised by the Defendants and the residents for his work." (*Id.* ¶¶ 1 & 5–7.)  Three months into his job, a black maintenance worker named Al Coney "began cursing, menacing, throwing things at and threatening to seriously harm the Plaintiff and [James O'Rourke, another maintenance worker] because they were white." (*Id.* ¶¶ 8–11.) Plaintiff complained about Mr. Coney to unspecified management personnel, who "took no disciplinary action against Mr. Coney" and rejected Plaintiff's "written incident report." (*Id.* ¶¶ 13–16.) According to the complaint, "Mr. Coney's conduct escalated," and both he and "[t]he Defendants' executive staff at the Stamford facility . . . engaged in racially demeaning comments towards the Plaintiff and Mr. O'Rourke." (*Id.* ¶¶ 18–23.)  "On May 12, 2006, shortly after he lodged his last complaint about Mr. Coney, the Plaintiff was fired for 'dissent on the team which has affected the morale and performance of the maintenance department.'" (*Id.* ¶ 27.)  Based on these allegations Plaintiff brought state-law claims for racial discrimination, retaliation, negligent supervision, and negligent retention.

The two defendants named in the original complaint removed the action to this Court on November 16, 2007, claiming diversity jurisdiction. (Not. Removal [Doc. # 1].)  In an Amended Notice of Removal they asserted that because "[P]laintiff's claims of racial and employment discrimination are founded upon rights guaranteed to the [P]laintiff by the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution," the Court also had federal-question jurisdiction.  (Am. Not. Removal [Doc. # 21] at ¶ 7.)  And in opposition to Plaintiff's "Objection to Removal" (later re-styled a motion for remand), they maintained that Title VII completely preempts Connecticut's employment anti-discrimination statutes.  (*See* Defs.' Mem. Supp. Opp'n Obj. Removal [Doc. # 12] at 12–15.)[2] In his Amended Complaint Plaintiff names four defendants: Forest City Enterprises, Inc. ("FCE Inc."); Sterling Glen of Stamford ("SG/S"); FC Stamford II, LLC ("FC LLC"); and Canton Centre Mall Limited Partnership ("CCMLP").[3]

Defendants offer the affidavit of Amanda Seewald, an attorney-employee of FCE Inc., which describes a complicated management and ownership structure to which Sterling Glen of Stamford was subject "[a]s of the dates listed in the complaint."  (Affidavit of Amanda

---

[2] At oral argument Defendants wisely withdrew their assertion of federal-question jurisdiction.  *See Cal. Federal Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 282–83 (1987).

[3] 28 U.S.C. § 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  Defendants interposed no objection to Plaintiff's motion to amend his complaint and the Court will consider the citizenship of FC LLC and CCMLP in considering Plaintiff's Motion for Remand.

Seewald, Ex. A to Defs.' Opp'n Remand [Doc. # 53], at ¶ 8.)[4]  According to Seewald, SG/S was "owned" by a limited liability company (FC LLC), which together with the corporation with which it shared headquarters, FCE Inc., was itself owned by CCMLP.  Seewald avers that FCE Inc.'s "headquarters" was in Cleveland, Ohio, which was also the "principal place of business" of FC LLC and CCMLP.  (*Id.* ¶¶ 8, 17.)  SG/S was managed and operated, however, as part of an 11-facility, three-state entity called Sterling Glen Portfolio (with an office and "nerve center" in Port Washington, New York), and that Portfolio was managed and operated by a limited liability company, Forest City Daly Housing Management LLC, that was owned by two corporations, Forest City Residential Group, Inc. of Ohio and Four Corners Development, Inc. of New York.

Seewald further avers that "although each local Sterling Glen facility is run by an on-site manager, all of the Sterling Glen facilities (no matter where they are situated) follow a Sterling Glen Portfolio 'management model' that was developed, articulated by and disseminated by [Forest City Daly Housing Management LLC] from its headquarters in Port Washington[, New York]," and that "all of the policies, procedures and practices" applied in each Sterling Glen facility, including their harassment and affirmative action policies, "originated from either Forest City Enterprises headquarters in Cleveland[, Ohio] and/or

---

[4]  Seewald's affidavit and SG/S Executive Director Lisa Kinsella's testimony suggest that SG/S is no longer affiliated with any of the other named defendants because it was part of a portfolio that was "recently" sold to an entity called Atria.  (*See* Seewald Aff. at ¶ 4; Kinsella Dep., Ex. B to Pl.'s Reply to Defs.' Opp'n Remand [Doc. # 58], at 17:19–21.)

the Sterling Glen Portfolio and [Forest City Daly Housing Management LLC] headquarters in Port Washington, and then disseminated from Port Washington."  Seewald avers that SG/S's "management personnel were themselves supervised by, and answered to, Forest City Daly Housing Management LLC management personnel located in Port Washington," and that personnel at Forest City Daly Housing Management LLC, but not SG/S's own management personnel, were authorized to resolve complaints of harassment.   (*Id.* ¶¶ 16–19.)

It is well-established that an artificial legal entity other than a corporation does not have a state of incorporation or "principal place of business" for diversity-jurisdiction purposes, and its citizenship is instead determined by the citizenship of that entity's members.  *See generally Carden v. Arkoma Associates*, 494 U.S. 185 (1990).  This principle applies with full force to a limited liability company ("LLC").  *See, e.g.*, *Bischoff v. Boar's Head Provisions Co., Inc.*, 436 F. Supp. 2d 626, 634 (S.D.N.Y. 2006) (citations omitted) ("For purposes of diversity jurisdiction, an LLC has the citizenship of each of its members."); *Basurto v. Mervyn's, LLC*, No. 3:07-CV-0174-G, 2007 WL 390711, *1 (N.D. Tex. Jan. 30, 2007) (citations omitted) ("Unlike a corporation, a limited liability company is not a citizen of the state in which it was organized unless one of its members is a citizen of that state.").

Thus, in removed cases predicated on diversity jurisdiction this District requires submission of "a signed statement" stating, in part,

> if any party is a partnership, limited liability partnership or limited liability
> company or corporation, the citizenship of each partner, general partner,

limited partner and member, and if any such partner, general partner, limited partner or member is itself a partnership, limited liability partnership or limited liability company or corporation, the citizenship of each member.

(Standing Order on Removed Cases, Appendix to D. Conn. Local Rules.)  Defendants submitted a signed statement that Sterling Glen Assisted Living Services Agency LLC has "its domicile and principal place of business" in Port Washington, New York.  (Response to Standing Order [Doc. # 7] at 1–2.)  However, because this statement provided no basis on which to conclude that SG/S (the entity named in the Amended Complaint) is a corporation, and because all the parties' briefs and evidence revolved around the legally erroneous premise that SG/S could have a "principal place of business" at all, the Court, citing *Carden*, directed the parties to submit additional documentation of Defendants' citizenship.[5]

In response Defendants submitted the affidavit of Neil G. Cawsey, the Director of Litigation and Claims Management for FCE Inc., who avers that "[t]he managing member of [FC LLC] is [CCMLP]" (Cawsey Aff. [Doc. # 65] at ¶ 9) and that CCMLP had three partners: a "[g]eneral [p]artner," F.C. Canton Centre, Inc., and two "[l]imited [p]artners," F.C. Vineyards, Inc. and Forest City Rental Properties Corporation (*id.* ¶ 6–7).  But exhibits attached to this affidavit reflect CCMLP as having one "[l]imited [p]artner," Four Corners

---

[5] In addition to their erroneous legal conclusion regarding the "principal place of business" of the non-corporation SG/S, it appears from their briefing that the parties have also arrived at the erroneous legal conclusion that a "limited liability company" is a "corporation."  It is not.  *Compare* CONN. GEN. STAT. §§ 33-601 to 33-998 (governing corporations), *with id.* §§ 34-100 to 34-242 (governing limited liability companies); *see generally Weber v. U.S. Sterling Securities, Inc.*, 282 Conn. 722, 729–30 (2007) (discussing "general principles governing limited liability companies").

Ownership II, LLC, in addition to its general partner F.C. Vineyards, Inc. (*Id.* at Ex. B at 3.)[6]
At oral argument counsel for Defendants could not explain this discrepancy, and in any
event the Cawsey Affidavit discloses neither the membership of Four Corners Ownership
II, LLC nor the principal place of business of Forest City Rental Properties Corporation.

Having requested and received leave to further supplement their record, Defendants
submitted a second Cawsey affidavit, which avers that FCE Inc. "does not own and/or
control Four Corners Ownership II, LLC," but that "[u]pon information and belief, Four
Corners Ownership II, LLC" was organized in New York State, "[i]ts principal address" is
in Port Washington, New York, "[i]t does not have any general and/or limited partners," and
"[i]ts sole managing member is Michael D. Daly" (2d Cawsey Aff. [Doc. # 67] at ¶ 4), but
provides no information about Mr. Daly's citizenship. Cawsey also avers that FC LLC's "sole
[m]ember" is CCMLP (*id.* at ¶ 5), but does not clarify the discrepancy regarding CCMLP's
membership. There are no exhibits attached to the second Cawsey affidavit.

## II.     Standards

### A.     Diversity Jurisdiction

Plaintiff asserts that this Court lacks diversity jurisdiction over this action, and thus
that the case must be remanded to Connecticut Superior Court under 28 U.S.C. § 1447(c),

---

[6] The exhibits included with the first Cawsey affidavit establish the following: FCE
Inc. was incorporated in Ohio and has its principal place of business there (Ex. A); CCMLP
is a limited partnership with the partners F.C. Canton Centre, Inc. and Four Corners
Ownership II, LLC (Ex. B); F.C. Canton Centre, Inc., was incorporated in Ohio and has its
principal place of business there (Ex. C); F.C. Vineyards, Inc. was incorporated in Ohio and
has its principal place of business there (Ex. D); Forest City Rental Properties Corporation
was incorporated in Ohio (Ex. E); and FC LLC is a "[l]imited [l]iability [c]ompany" (Ex. F).

which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Under § 1332(a)(1), a district court has original subject-matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).

At oral argument Plaintiff confirmed that the amount in controversy is not contested by him. As to citizenship, because the defendants in this case are both incorporated and unincorporated entities, the Court will focus on the citizenship of the non-corporation defendants, which as artificial entities take the citizenship of each of their members. *Carden*, 494 U.S. at 195–96. It is the identification of these members' citizenship which has been the subject of the Court's requests for a clarified record.

**B.      Burden on Removing Party to Prove Jurisdiction**

As general rule, "the party asserting jurisdiction bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). That burden is the same in cases removed from state court: "When a party removes a state court action to the federal court on the basis of diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R. G.*

*Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *CenterMark Props.*, 30 F.3d at 301 ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper."); *United Mutual Houses, L.P. v. Andujar*, 230 F. Supp. 2d 349, 350 (S.D.N.Y. 2002).

### III.    Discussion

#### A.    Citizenship of Sterling Glen of Stamford

The parties dispute whether SG/S has a "principal place of business" in Connecticut—and thus is a citizen of Connecticut for purposes of diversity jurisdiction—under either of the two "tests for determining the location of a corporation's principal place of business" recognized by the Second Circuit for purposes of 28 U.S.C. § 1332(c): "(1) the 'nerve center' test; and (2) the 'public impact' or 'place of operations' test." *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 470–71 (S.D.N.Y. 2005).  The parties' dispute elides the critical antecedent question of whether Defendant SG/S is a "corporation" at all, such that application of *any* principal-place-of-business analysis under § 1332(c) is appropriate.

Under § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  This provision cannot be construed to cover entities that are not incorporated at all, given that it expressly addresses an entity's status of having "been incorporated."  Indeed, the Supreme Court has expressly held that when Congress crafted § 1332(c) "[n]o provision was made for the treatment of artificial entities other than corporations, although the existence of many new . . . forms of commercial enterprises . . . must have been obvious" to Congress.  *Carden*,

494 U.S. at 196–97.  Thus, for unincorporated artificial entities the general and "oft-repeated rule" is that "the citizenship of an artificial entity"—and, consequently, "diversity jurisdiction in a suit by or against the entity"—is determined not by the entity's "principal place of business" (for it does not have one for purposes of § 1332(c)), but rather "depends on the citizenship of 'all the members,' 'the several persons composing such association,' [and] 'each of its members.'"  *Id.* at 195–96 (citations omitted).

Here, the evidence demonstrates that SG/S is not only *not* a corporation—making a § 1332(c) analysis inapplicable—but it is not even an unincorporated artificial entity: it is an assumed name of Defendant FC Stamford II, LLC, which is "doing business as" SG/S.[7] Under Connecticut law, as "a fictitious or assumed business name" a d/b/a "is not a legal entity."  *America's Wholesale Lender v. Pagano*, 87 Conn. App. 474, 477 (2005) (holding that trial court had no subject matter jurisdiction over suit brought by America's Wholesale Lender because that entity, as d/b/a for Countrywide Home Loans, Inc., was not "a person in law or a legal entity with legal capacity to sue").  Indeed, as the Connecticut Supreme Court has recognized:

> [I]t appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity . . . [and that] [t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name. . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his, and makes him personally liable for the torts and contracts of the business.

---

[7] Through an interrogatory Plaintiff asked Defendants to "[s]tate whether and if yes, when and where, Sterling Glen of Stamford was organized as a corporate entity."  In their response Defendants stated that "Sterling Glen of Stamford was not organized as a corporate entity.  It was created as a d/b/a for FC Stamford II LLC."  (Defs.' Interrogatory Responses, Att. 1 to Pl.'s Reply, at 16 (Interrogatory 24).)

*Monti v. Wenkert*, 287 Conn. 101, 135 (2008) (quoting *Edmands v. CUNO, Inc.*, 277 Conn. 425, 454 n.17 (2006) (citations omitted)).

Because SG/S is an assumed name for FC Stamford II, LLC, it is neither a corporation (and thus has neither a "principal place of business" or "State by which it has been incorporated" under § 1332(c)) nor "an artificial entity" whose citizenship is determined by its members' citizenship. Instead, as a d/b/a SG/S has no legal existence, and thus no citizenship, aside from that of "the person or corporation who does business under [its] name." Plaintiff's naming of SG/S, the d/b/a for FC Stamford II, LLC, as a defendant gives SG/S no independent valence in the Court's determination of whether diversity of citizenship exists in this case. The parties' misguided dispute over the principal place of business and state of incorporation of SG/S is therefore beside the point.

**B.     Citizenship of Forest City Enterprises, Inc., FC Stamford II, LLC, and Canton Centre Mall Limited Partnership**

The parties whose citizenship will be dispositive for purposes of determining diversity are Plaintiff, who is undisputedly a Connecticut citizen, and Defendants Forest City Enterprises, Inc., FC Stamford II, LLC, and Canton Centre Mall Limited Partnership. Neither Defendants' three affidavits nor their statement in response to the Standing Order on Removed Cases shows that there is complete diversity in this case. Despite having had five opportunities (Notice of Removal, Response to the Standing Order on Removed Cases, Amended Notice of Removal, and two rounds of supplemental briefing after the Court identified what details were lacking) to provide the information necessary for the Court to ascertain that the citizenship of each defendant is diverse from Plaintiff, Defendants have failed to do so: they have not explained the discrepancy regarding the membership of

CCMLP, listed the principal place of business of Forest City Rental Properties Corporation (one of the CCMLP members), or provided any citizenship information for Michael Daly, the "sole" member of Four Corners Ownership II, LLC (another apparent CCMLP member).

Defendants' incomplete patchwork of proffered information about their members' citizenship (and their members' members' citizenship) thus fails to show that complete diversity exists among the parties. Therefore, Defendants have failed to satisfy their burden of establishing that this Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Indeed, Defendants' inability to date to make this showing raises the question of whether they had an objectively reasonable basis for removing this case in the first place. *Cf. Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (explaining that under 28 U.S.C. § 1447(c) a court may permit costs and attorney's fees "where the removing party lacked an objectively reasonable basis for seeking removal"). However, because *all* parties failed to comprehend or apply the relevant law, no costs or fees will be awarded here.

## IV.    Conclusion

For the reasons set forth above, Plaintiff's Motion for Remand [Doc. # 50] is GRANTED. The Clerk is directed to remand this case to the Superior Court of Connecticut, Judicial District of Stamford/Norwalk at Stamford.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22d day of June, 2009.

12